Filed 10/15/24  P. v. Brennen CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>ALEXANDER BRENNEN,<br><br>        Defendant and Appellant. | A165983<br><br><br>(Contra Costa County<br>Super. Ct. No. 011975465) |

Defendant appeals from his conviction on multiple counts of domestic violence against two former relationship partners.  He was convicted by a jury of multiple counts of corporal injury to a relationship partner (Pen. Code, § 273.5, subd. (a)),[1] criminal threats (§ 422), false imprisonment (§§ 236, 237), stalking (§ 646.9, subd. (b)), dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1)), domestic battery (§ 243, subd. (e)(1)), and violation of a court order (§ 166, subd. (a)(4)); one count of kidnapping (§ 207, subd. (a)); and one count of assault with a deadly weapon (§ 245, subd. (a)(1)).  The jury also found true the personal use of a deadly weapon enhancement (§ 12022, subd. (b)(1)) as to three of the counts.  In a bifurcated jury trial, the jury

---

[1] All statutory references are to the Penal Code unless otherwise stated.

1

found true multiple aggravating factors. Defendant admitted five prior convictions.

Defendant contends that (1) the trial court committed instructional error regarding the kidnapping count by failing to instruct on the lesser included offense of false imprisonment; (2) the prosecutor committed misconduct during argument in the bifurcated jury trial of the aggravating factors; (3) the trial court erred by imposing the upper term on one of the corporal injury counts; (4) the two-year on-bail enhancement should be vacated because it was neither admitted nor found true by the jury or the trial court; and (5) the $3,000 restitution fine should be vacated because the trial court's ability to pay finding was arbitrary and irrational. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    *First Amended Information*

The first amended information alleges the following counts[2] involving Jane Doe 2: On January 26, 2021, defendant threatened Jane Doe 2 (count 1; § 422, subd. (a); misdemeanor criminal threats) and inflicted corporal injury upon her (count 2; § 273.5, subd. (a)). On May 27, 2021, defendant falsely imprisoned Jane Doe 2 (count 3; §§ 236, 237; false imprisonment by violence) and used a knife in the commission of the false imprisonment (enhancement 1; § 12022, subd. (b)(1); special allegation–use of deadly weapon); battered Jane Doe 2 (count 4; § 243, subd. (e)(1); misdemeanor battery on a relationship partner); kidnapped Jane Doe 2 (count 5; § 207, subd. (a)) and used a bat in the commission of the kidnapping (§ 12022, subd. (b)(1); special allegation–use of deadly weapon); made criminal threats against her (count 6; § 422, subd. (a)) and used a knife in the commission of the crime (§ 12022, subd. (b)(1); special allegation–use of deadly weapon); and

---

[2] The charges were felonies unless otherwise stated.

2

assaulted Jane Doe 2 with a bat (count 7; § 245, subd. (a)(1); assault with a deadly weapon) and personally used a dangerous and deadly weapon (§ 969f; special allegation).  From May 27, 2021, to October 25, 2021, defendant stalked Jane Doe 2 (count 8; § 646.9, subd. (b)), and on October 24, 2021, defendant willfully disobeyed a court order issued on September 7, 2021 (count 16; § 166, subd. (a)(4); misdemeanor disobeying court order).

Further, the first amended information alleges the following counts involving Jane Doe 1:  On September 1 and 5, 2021, defendant inflicted corporal injury on Jane Doe 1 (counts 9–10; § 273.5, subd. (a)) and on September 5, 2021, falsely imprisoned her (count 11; §§ 236, 237; false imprisonment by violence).  On September 8, 2021, defendant attempted to dissuade Jane Doe 1 from reporting a crime (count 12; § 136.1, subd. (b)(1)).  On September 13, 2021, defendant battered Jane Doe 1 (count 14; § 243, subd. (e)(1); battery on a relationship partner).[3]  From September 5, 2021, to September 13, 2021, defendant stalked Jane Doe 1 (count 15; § 646.9, subd. (b); stalking) and personally used a firearm (§§ 12022.5, subd. (a), 969f).  On October 26, 2021, defendant attempted to dissuade Jane Doe 1 from reporting a crime (count 18; § 136.1, subd. (b)(1)) while he was on bail (§ 12022.1; special allegation–offense while on bail or own recognizance), and between October 25, 2021, and October 27, 2021, defendant willfully disobeyed a court order issued on October 4, 2021 (count 17; § 166, subd. (a)(4); misdemeanor).

Count 13 alleged defendant assaulted Patrick W. with a firearm on September 8, 2021 (count 13; § 245, subd. (a)(2); assault with a firearm).

---

[3] The first amended information states count 14 was charged as a felony; however, a violation of section 243, subdivision (e)(1) is a misdemeanor.

The first amended information alleged defendant committed the offenses while on felony probation (§ 1203, subd. (k)); he had five prior felony convictions; and various aggravating factors applied to the offenses and to the defendant.

## II.   *Prosecution Case*

### A.   **Jane Doe 2 (Counts 1–8 & 16)**

Defendant and Jane Doe 2 had a multi-year romantic relationship and lived together from January 2017 to April 2021. In late 2020, Jane Doe 2 became pregnant with their child. The couple named the unborn child Penelope. However, Jane Doe 2 miscarried in October 2020. On January 26, 2021, defendant became angry with Jane Doe 2 and accused her of cheating on him. He pulled her off the bed by her feet and screamed at her. He backed away, and Jane Doe 2 went into the bathroom. Defendant followed her, grabbed her, and pushed her against a wall. He told her he should "beat [her] ass . . . ." Jane Doe 2 sustained scratches on her chest. Jane Doe 2's daughter from a previous relationship was asleep in her bedroom during the altercation. Jane Doe 2 ran out of the house and called 911. Defendant later sent Jane Doe 2 a text message apologizing for getting " 'aggressive' " with her and for hurting her.

Around 1:00 a.m. on May 27, 2021, after defendant moved out of Jane Doe 2's home, Jane Doe 2 awoke to find defendant in her bed. She told him to leave, and he climbed on top of her and yelled at her. He accused her of cheating on him and was angered that she kicked him out. Jane Doe 2 screamed, and defendant covered her mouth and pulled a pocketknife from his waist belt and held it to her neck. Defendant told her if she screamed again he would kill her daughter. Eventually, defendant got up and began going through Jane Doe 2's dresser drawers. Jane Doe 2 reached for her cell

4

phone, which she had left at her bedside, but defendant told her he had taken it. Defendant found a bottle of medicine Jane Doe 2 was prescribed after having gallbladder surgery. He opened the bottle and took out 11 pills. He began chewing them and spitting. He screamed at Jane Doe 2, " 'You're going to watch me die, bitch.' " Defendant got on top of Jane Doe 2 again, for a couple of minutes, while he chewed the pills. Jane Doe 2 was able to break free and ran out the back door. As she ran a couple of feet onto the back porch, defendant grabbed her and pulled her back into the house. Defendant then slammed Jane Doe 2 against the refrigerator and swung a bat at her face. He threw the bat on the floor, and then he slapped Jane Doe 2 in the face. She fell in front of the sink. Jane Doe 2 curled up into a fetal position and begged defendant to leave. Defendant threw Jane Doe 2's phone at her as he left. She called 911.

Jane Doe 2 obtained emergency and permanent protective orders against defendant. However, he continued to call and text her. In August 2021, Jane Doe 2 moved to North Carolina. Although she was planning to move there eventually, she moved sooner than she planned because she did not feel safe living near defendant. In October 2021, defendant sent Jane Doe 2 a letter, apologizing to her and asking for her to forgive him. About a week before trial began, defendant mailed Jane Doe 2 a letter addressed to Penelope, the name of the fetus Jane Doe 2 miscarried.

### B.      Jane Doe 1 (Counts 9–12, 14–15, 17–18)

Defendant and Jane Doe 1 began dating in May 2021. On September 6, 2021, Jane Doe 1 went to a police station and reported that about a week earlier defendant hit her with a guitar on the side of her head, causing a black eye. Around midnight on September 6, 2021, Jane Doe 1 texted defendant she was ending their relationship. Defendant showed up at her

5

home around 1:00 a.m.  She told him he could not enter.  Nevertheless, he climbed in through a window.  They argued, and defendant slapped Jane Doe 1 in the face.  She tried to push past him, and he put his hand on her neck and pushed her onto her bed.  He choked her for about 30 seconds. Jane Doe 1 obtained an emergency protective order.  On September 7, 2021, Jane Doe 1 texted defendant a photo of the protective order.  After learning of the protective order, defendant repeatedly texted and left threatening voicemail messages for Jane Doe 1.  Defendant threatened to hurt Jane Doe 1's friends and to report her to Child Protective Services.

On October 25, 2021, after defendant was arrested and released from custody, he texted Jane Doe 1.  Jane Doe 1 told defendant they were not supposed to be in contact because of the protective order, but he continued to call and to text her.  In one of their text exchanges, Jane Doe 1 said she was going to call the police and defendant texted back, " 'Please don't.' "

## III.  *Defense Case*

Defendant denied slapping and pushing Jane Doe 2 on January 26, 2021.  He also denied hitting Jane Doe 2 on May 27, 2021; pointing a knife at her; and swinging a bat at her.  He admitted sending Jane Doe 2 an ultrasound photo of her pregnancy and writing " 'Home Abortion' " under the photo to hurt Jane Doe 2, who had miscarried.  Defendant denied hitting Jane Doe 1 with a guitar.  He explained that he was packing up his belongings after Jane Doe 1 kicked him out of the house and that his guitar slid off the top of a box and hit Jane Doe 1's face.  Defendant denied hitting, slapping, and choking Jane Doe 1 on the night of September 5 and the early morning of September 6, 2021.  He admitted he contacted Jane Doe 1 multiple times after the protective order was issued, and left voicemail

6

messages calling her "a piece of shit" and saying he was " 'going to fuck your world up.' "

## IV.  *Verdict and Sentencing*

The jury found defendant guilty on all counts except count 13, on which they were unable to reach a verdict.[4]  The trial court declared a mistrial on count 13.  The jury found true the personal use of a deadly weapon enhancement on counts 3, 5, and 6.  The defendant admitted the five strike priors.  Following the return of the guilty verdicts, in a bifurcated proceeding the parties made arguments regarding seven aggravating factors and the jury found true all of the aggravating factors.

On July 15, 2022, the trial court dismissed four of the five admitted strike priors in the interest of justice.  The court then sentenced defendant to a total of 24 years, comprised of eight years on count 2 (§ 273.5, subd. (a); corporal injury to relationship partner), which was the upper term of four years doubled for the prior strike; five consecutive terms of two years each on counts 7 (§ 245, subd. (a)(1); assault with deadly weapon), 8 (§ 646.9, subd. (b); stalking), 9 (§ 273.5, subd. (a); corporal injury), 10 (§ 273.5, subd. (a); corporal injury), and 15 (§ 646.9, subd. (b); stalking); three consecutive terms of 16 months each for counts 3 (§§ 236, 237; false imprisonment), 12 and 18 (§ 136.1, subd. (b)(1); dissuading a witness); and two years for the on-bail enhancement on count 18 (§ 12022.1).  The trial court imposed concurrent terms on counts 5 (§ 207, subd. (a); kidnapping), 14 (§ 243, subd. (e)(1); domestic battery), 16 and 17 (§ 166, subd. (a)(4); disobeying court order).  It imposed and stayed, pursuant to section 654, sentence on counts 1 (§ 442, subd. (a); criminal threats), 4 (§ 243, subd. (e)(1); domestic battery),

---

[4] Count 13 alleged assault with a firearm against Patrick W. Patrick W. was a friend of Jane Doe 1.  He did not testify at trial.

6 (§ 422, subd. (a); criminal threats), and 11 (§§ 236, 237; false imprisonment).  The trial court dismissed the deadly weapon enhancements on counts 3, 5, and 6.  Finally, it imposed a restitution fine of $3,000.

## DISCUSSION

### I.   *Failure to Instruct on Lesser Included Offense*

Defendant contends the trial court prejudicially erred in failing to instruct the jury on the lesser included offense of false imprisonment as to the kidnapping count.  (§ 207, subd. (a); count 5.)  The People argue, among other contentions, that any instructional error was invited error, which defendant may not challenge on appeal.  We agree that the invited error doctrine applies to defendant's claim of instructional error.

### A.   Additional Facts

The kidnapping count is based on the incident on May 27, 2021, when Jane Doe 2 attempted to run away from defendant to go outside to call for help.  Jane Doe 2 testified that she went "[j]ust a couple of feet" onto the back porch when defendant grabbed her and pulled her back into the house.  The prosecutor argued that the asportation element of kidnapping was satisfied based on defendant's moving Jane Doe 2 a "substantial distance" back into the house from outside.

At the jury instruction conference, the trial court specifically stated to the parties that false imprisonment is a lesser included offense of kidnapping.  Defense counsel stated, "I'm not requesting that, Your Honor."  The trial court turned to the prosecutor, who stated, "I don't think we need to have it, either, if he's not affirmatively requesting it."  The trial court said, "Okay," and moved on to discuss other matters.  The jury was instructed on kidnapping using CALCRIM No. 1215.  The trial court did not instruct on any lesser included offenses for the kidnapping count.

8

## B.    Analysis

The trial court has a sua sponte duty to instruct on lesser included offenses when substantial evidence supports the instruction.  (*People v. Cooper* (1991) 53 Cal.3d 771, 827 (*Cooper*).)  However, " '[a] defendant may not invoke a trial court's failure to instruct on a lesser included offense as a basis on which to reverse a conviction when, for tactical reasons, the defendant persuades a trial court not to instruct on a lesser included offense supported by the evidence.  [Citations.]  In that situation, the doctrine of invited error bars the defendant from challenging on appeal the trial court's failure to give the instruction.'  [Citation.]"  (*People v. Horning* (2004) 34 Cal.4th 871, 905.)  We need not determine whether substantial evidence warranted an instruction on the lesser included offense of false imprisonment as to count 5 because even if there were error, defendant is barred from asserting it under the invited error doctrine.

As explained by our Supreme Court, for the invited error doctrine to apply, "the record must show only that counsel made a conscious, deliberate tactical choice between having the instruction and not having it.  If counsel was ignorant of the choice, or mistakenly believed that the court was not giving it to counsel, invited error will not be found.  If, however, the record shows this conscious choice, it need not additionally show counsel correctly understood all the legal implications of the tactical choice.  Error is invited if counsel made a conscious tactical choice." (*Cooper, supra*, 53 Cal.3d at p. 831.)  As in *Cooper*, the record here demonstrates that defense counsel made a tactical decision to affirmatively state he was not requesting the instruction on the lesser included offense.  The trial court specifically stated that false imprisonment is a lesser included offense of kidnapping and implied that it planned to give the instruction.  Only after defense counsel

stated he was not requesting the instruction and the prosecutor agreed the instruction need not be given in light of defense counsel's statement did the trial court agree not to give the instruction. Moreover, defense counsel's decision not to request the lesser included instruction was consistent with defendant's testimony, in which he denied attacking Jane Doe 2 on May 27, 2021, and grabbing her and bringing her back inside the house. On this record, we find that defense counsel deliberately caused the trial court to fail to give the false imprisonment instruction. (*Cooper, supra*, at p. 831.)

Defendant contends that the invited error doctrine does not apply because trial counsel's statement that he was "not requesting" the false imprisonment instruction is not equivalent to expressly asking the trial court to forgo giving the lesser included instruction. According to defendant, his defense counsel's statement at the jury instruction conference was not the cause of the trial court's alleged error. *People v. Lara* (1994) 30 Cal.App.4th 658 rejected a similar argument on nearly identical facts. In *Lara*, the trial court acknowledged its duty to instruct on a lesser included offense and defense counsel stated she was " 'not requesting for any lessers[.]' " (*Id.* at p. 673.) *Lara* applied *Cooper* and found that defense counsel's comment was the equivalent of stating she did not want the instruction on the lesser included offense and constituted a conscious, tactical choice to which the invited error doctrine applied. (*Lara, supra*, at pp. 673–674.) The same is true here.

## II. *Prosecutorial Misconduct*

Defendant contends the prosecutor committed prejudicial misconduct during closing arguments in the bifurcated trial on the aggravating factors by advising the jury that if it found the aggravating factors true, the prosecutor

10

would be able to ask the judge to impose a lengthier sentence. The defendant did not object to any portion of the prosecutor's closing argument.

## A. Background

During closing argument in the bifurcated aggravating factors trial, the prosecutor's argument included the following statements: "Here's a road map of the trial. Prove the guilt. [¶] I have to prove to you the guilt of the charges that I've charged, the enhancements that I've charged. That's the work that you just did. [¶] Next I have to prove what are called aggravating factors or circumstances. These are factors or circumstances that relate to the crimes that he has been found guilty of. [¶] So, we're done with part one and we're doing part two. [¶] The reasons we do this is because crimes have very wide range of punishment possibilities. They can go anywhere from zero time to lots of time, right. They can be no time at all and some sort of rehab, or they can be lots of time behind bars. There's a huge range of possibilities. [¶] It is the Judge's role to decide what the appropriate sentence is in a case, okay? That is her role. You were told don't consider it at all. [¶] We're taking a half step back right here and asking you to begin the work of considering sentencing, but don't consider what the Judge is going to do later down the road. [¶] I know it's a weird space to be in. It's new for everyone. [¶] Certain factors, aggravating factors and mitigating factors, can be used to help the Court, to guide the Court in choosing the appropriate sentence for the crimes that were committed in this case, the way those crimes were committed, and as it relates to the defendant as a person himself given his background. [¶] The Judge is responsible for considering all of that information and deciding what the appropriate sentence is, okay?" "It used to be—before January 1st of this year, it used to be the case that after the trial, we would get the verdict, you could go home. But now you have to stay here because

11

the Legislature has decided that they would like, before I am allowed to argue to the Judge at a sentencing hearing that this crime was particularly aggravated, before I can argue any of those factors to her at the hearing, I have to prove them to you. [¶] And so what that means is you have to stay after the verdict now and help decide which factors I will be allowed to present at the hearing to the Judge." "So again, remember, when you're considering this, you are only considering the aggravating factors. You have to put out of your mind how, if at all, they could affect a sentence that he's given down the road. [¶] You have to put out of your mind how, if at all, they would be balanced by other mitigating factors. The Legislature only wants you to decide which factors can I bring to the hearing to argue to the Judge. [¶] And my argument to you, folks, is that all of these factors should be present at that hearing because all of these factors are supported by evidence that was proven beyond a reasonable doubt." In her rebuttal argument, the prosecutor stated: "You're just deciding whether there are sufficient facts for me to be able to argue certain factors, should I choose, to the Court to consider when it comes time to sentence. That's it. It's just a gatekeeping function."

Defendant neither objected nor requested an admonishment to any of the prosecutor's comments. However, as discussed *post*, immediately following the closing arguments the trial court instructed the jury not to consider punishment.

## B.    Analysis

Defendant argues that the prosecutor's repeated statements in her closing argument, advising the jury that if it finds the aggravating factors true she would be able to argue that the judge should impose a lengthier sentence, improperly asked the jury to consider defendant's possible

12

punishment. He relies on *People v. Holt* (1984) 37 Cal.3d 436, which held that a defendant's possible punishment is not a proper matter for jury consideration and the jury is not permitted to weigh the possibility of parole in determining a defendant's guilt. (*Id.* at p. 458.)

As an initial matter, defendant made no objection at trial to the portions of the closing argument which he now contends constituted prejudicial misconduct; thus, he has forfeited his claim. (*People v. Peterson* (2020) 10 Cal.5th 409, 464–465.) Defendant contends that his failure to object is excusable because an admonition would not have cured the harm caused by the prosecutor's alleged misconduct. His argument consists of a single conclusory sentence stating that "the concept of increased punishment was firmly implanted in the jurors' minds and no admonition by the trial court could possibly have cured the harm." We reject defendant's undeveloped argument. (See *People v. Peoples* (2016) 62 Cal.4th 718, 797–798 [rejecting vague argument that objection to statements made during closing arguments would have been futile].)

Defendant further contends that if we find forfeiture we should find that trial counsel rendered ineffective assistance of counsel by failing to object. On this record, we find no ineffective assistance of counsel because any possible suggestion by the prosecutor that the jury was permitted to consider punishment in deciding whether the aggravating factors were true was not prejudicial. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241 [" 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed' "].)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied

13

the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.) When considered in the context of the overall arguments at the aggravating factors trial, we do not find a reasonable likelihood that the jury improperly considered punishment based on the prosecutor's comments.[5] The prosecutor herself noted multiple times that sentencing decisions were within the exclusive purview of the trial judge. The trial court also properly instructed the jury after argument and before deliberations in the bifurcated aggravating factors trial, "You must reach your verdict without any consideration of punishment. [¶] So you're just here to decide aggravating factors, and as [the prosecutor] pointed out, any decision regarding sentencing remains in the purview of this Court." We assume the jury followed the trial court's instructions. (*People v. Stevens* (2007) 41 Cal.4th 182, 205–206 [finding no reasonable likelihood prosecutor's remark that second degree murder verdict would " 'save [defendant's] life' " misled the jury as to whether it could consider punishment in its guilt deliberations when jury was told to disregard remark and was instructed not to consider penalty in determining guilt].)[6]

---

[5] Although we find it is not reasonably likely that the jury considered defendant's punishment, we do not endorse the prosecutor's comments regarding defendant's sentencing or punishment ranges, or what factors the prosecutor may be able to argue to the court at sentencing. The prosecutor's comments improperly referred to punishment. (*People v. Thomas* (2011) 51 Cal.4th 449, 486.) Under different circumstances, similar comments by a prosecutor could be found prejudicial.

[6] Defendant's reliance on *Holt* is misplaced. In *Holt*, the Supreme Court found that the prosecutor's statement that a certain jury finding would "guarantee[] [the defendant] a parole date" was improper. (*Holt, supra*, 37

We find that in the context of the argument and instructions, none of the complained-of statements "infect[ed] the trial with such unfairness as to make the conviction a denial of due process." (*People v. Morales* (2001) 25 Cal.4th 34, 44.) Nor is there "a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*Ibid.*)

### III. *Imposition of Upper Term on Count 2 in Reliance on Six Aggravating Factors*

Defendant contends the trial court erred when it imposed the upper term on count 2 in reliance on six aggravating factors that the jury allegedly did not specifically find true as to count 2. He claims the error violated his constitutional and statutory rights to a jury trial on the aggravating factors. Although defendant had a jury trial on the aggravating factors alleged by the People, he contends his rights were violated because the jury used "generic" verdict forms that were not count-specific. According to defendant, as to the six aggravating factors relating to the crime, the jury did not necessarily find them true as to count 2 and therefore the trial court was not permitted to impose the upper term on count 2 based on those factors. We find defendant forfeited this claim and that the record demonstrates no error.

#### A. Section 1170

Effective January 1, 2022, section 1170 was amended to provide that when a judgment of imprisonment is to be imposed and a statute specifies

---

Cal.3d at pp. 457–458.) We find *Holt* distinguishable because there the prosecutor's comment was made during the guilt phase of the trial and not in a bifurcated aggravating factor trial. (*Ibid.*) Further, in *Holt*, the conviction was reversed because the Supreme Court found cumulative prejudice based on several errors, including the objectionable statement during closing argument, the erroneous admission of evidence, and improper impeachment. (*Holt, supra*, at pp. 458–459.)

three possible terms, a court may impose the upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1)–(2), amended by Stats. 2021, ch. 731, § 1.3.) However, notwithstanding these provisions, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

### B. Additional Facts

The first amended information alleged that multiple aggravating circumstances applied to the crimes alleged and to the defendant, pursuant to California Rules of Court, rule 4.421(a) and (b). In the bifurcated trial on the aggravating factors, the jury found true the following aggravating factors relating to the crimes: (1) that the offense involved threat of great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness, within the meaning of rule 4.421(a)(1); (2) that defendant was armed with or used a weapon during the commission of the offense, within the meaning of rule 4.421(a)(2); (3) that the victims were particularly vulnerable, within the meaning of rule 4.421(a)(3); (4) that defendant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process, within the meaning of rule 4.421(a)(6); (5) the manner in which the crime was carried out indicates planning, sophistication or professionalism, within the meaning of rule 4.421(a)(8); and (6) defendant took advantage of a position of trust or confidence to commit

16

the offense, within the meaning of rule 4.421(a)(11).  The jury also found true the aggravating factor relating to the defendant that he engaged in violent conduct that indicates a serious danger to society, within the meaning of rule 4.421(b)(1).

The People also alleged defendant had five prior strike convictions for residential burglary.  Defendant waived a jury trial on the prior strikes and admitted the five prior convictions.

The parties discussed proposed jury instructions for the bifurcated trial with the court.  One of the People's requests was that the jury be instructed that although it must unanimously agree on whether an aggravating factor is true, it does not need to unanimously agree as to the fact or facts that support its conclusion.  Defense counsel objected to what the trial court called the "anti-unanimity instruction," stating, "[I]t's my position that the facts need to be unanimously agreed upon by the jury, not just a factor.  So I would object to this request."  The trial court agreed to give the "anti-unanimity instruction."

The trial court instructed the jury at the bifurcated trial on the seven aggravating factors and explained, "You do not all have to agree on which facts support your conclusion the allegation is true."  The jury was given a separate verdict form for each aggravating factor.  The forms stated each aggravating factor and asked whether it was true or not true.  The verdict forms referred to "the offense" or "the victims" or "the crime."  They did not reference any particular counts.  The defendant does not assert that he ever objected to the language of the verdict forms, and nothing in the record suggests he did so.

17

## C.    Sentencing

Defendant requested that the trial court strike his five prior strikes in the interest of justice pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529–530.  His sentencing memorandum did not reference the aggravating factors, but it did note the possible triad sentencing ranges for each felony count.  The People opposed the defendant's request and asked the trial court to sentence defendant under the "Three Strikes" law sentencing scheme to an indeterminate life term with a minimum of 100 years to life plus a determinate term of 17 years.  The People's sentencing memorandum noted that in addition to convicting defendant on 17 counts, the jury also found true seven circumstances in aggravation.  The People's proposed sentence included imposing the upper term of four years for count 8 (§ 646.9, subd. (b); stalking) based on any one of the seven aggravating factors.

At the July 15, 2022, sentencing hearing, the trial court heard from the victims, defendant, defendant's sister, and defendant's mother.  At the close of those statements, both parties submitted on defendant's *Romero* motion.  The trial court granted defendant's motion in part, finding that the interests of justice would not be served by sentencing defendant to an indeterminate life sentence or consecutive life sentences.  The trial court dismissed all but one prior strike.  The trial court then turned to sentencing, and the People argued that defendant showed a lack of remorse and that the court should impose a second strike sentence.  Defense counsel responded that defendant's insight had grown significantly as evidenced by defendant's statement to the court.  Both parties then submitted.

The trial court stated that defendant was mentally and physically abusive to the victims and "unrelenting in his vicious text messages."  It

18

further stated that just before the start of trial, defendant mailed a letter to Jane Doe 2, addressed to the fetus she miscarried, which was "an act of cruelty." The court selected count 2, corporal injury (§ 273.5), as the principal term and imposed the aggravated, upper term of four years doubled based on the prior strike (§ 667, subd. (e)(1)). The court explained it "selects the aggravated term in Count 2 given the jury's finding true on the factors in aggravation, and that there are no factors in mitigation which warrant the imposition of the mitigating or low term in this case. [¶] The Court finds, based on the facts of the case as well as the defendant's criminal history, the aggravated term is warranted." On the remaining counts, defendant was sentenced to five consecutive terms of two years each on counts 7 (assault with deadly weapon), 8 (stalking), 9 (corporal injury), 10 (corporal injury), and 15 (stalking); three terms of 16 months each on counts 3 (false imprisonment), 12 (dissuading a witness), and 18 (dissuading a witness); and two years for the on-bail enhancement on count 18 (dissuading a witness). The trial court imposed concurrent terms on counts 5 (kidnapping), 14 (domestic battery), 16 (violating court order), and 17 (violating court order). It imposed and stayed, pursuant to section 654, sentence on counts 1 (criminal threats), 4 (domestic battery), 6 (criminal threats), and 11 (false imprisonment). The trial court dismissed the deadly weapon enhancements on counts 3, 5, and 6 and dismissed the five-year prior serious felony conviction, pursuant to section 667, subdivision (a). Finally, it imposed a reduced restitution fine of $3,000.

## D. Analysis

Defendant claims he preserved the issue of the trial court's allegedly erroneous sentence of the upper term on count 2 based on aggravating factors which the jury did not find true as to count 2 specifically. He claims his

objection to the trial court's instruction that the jury may find an aggravating factor true without unanimously agreeing on the same underlying fact "conveyed the message to the trial court that it was problematic to use generic verdict forms on the aggravating factors that were not count-specific."

We agree with the People that defendant's objection to the anti-unanimity instruction cannot fairly be construed as an objection to the lack of specification of count numbers on the verdict forms. When the trial court ruled on the defendant's objection to the anti-unanimity instruction, it gave the example of the aggravating factor based on the victims' vulnerability and noted that such a finding is based on the totality of the circumstances and that some jurors may find the victims were vulnerable because they were single mothers while others may consider Jane Doe 1's drug problem, "[b]ut the issue isn't what facts they agree on specifically, because in isolation, either of those reasons may be sufficient. It's whether or not, based on the totality of the evidence, they agree that she was vulnerable." Nowhere in the discussion regarding the anti-unanimity instruction did the defendant argue or request that the verdict forms refer to each count separately. Nor does defendant contend on appeal that the trial court erred in giving the anti-unanimity instruction when it instructed the jury regarding the aggravating factors. We are not persuaded that the defendant's objection to the anti-unanimity instruction was also an objection to the use of what he now claims were "generic" verdict forms that "were not count-specific."

Defendant's complaint is that the language of the verdict forms was imprecise. "An objection to jury verdict forms is generally deemed waived if not raised in the trial court." (*People v. Toro* (1989) 47 Cal.3d 966, 976, fn. 6, disapproved on other grounds in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3; *People v. Lewis* (1983) 147 Cal.App.3d 1135, 1142 [failure to object to

verdict forms in trial court "precludes consideration of appellate challenge thereto"].) Defendant failed to object below to the language of the aggravating factor verdict forms and has waived his complaint that the forms were too generic to be relied upon by the trial court at sentencing. Moreover, at sentencing, defendant also failed to object to the trial court's reliance on any of the aggravating factors found true by the jury. (*People v. Scott* (1994) 9 Cal.4th 331, 355–356 [holding defendant waived claim that trial court abused its discretion in aggravating his sentence based on factors that were inapplicable, duplicative, and improperly weighed].) We also reject defendant's argument that the issue is preserved for appeal because his substantial rights to a jury trial have been impacted. Defendant had a bifurcated jury trial on the aggravating factors.

Even if we were to find no waiver, the record supports a finding that the jury understood that the verdict forms applied to all counts. Defendant's reply brief acknowledges that he is not claiming the jury needed to complete separate verdict forms for each aggravating factor for each count, which would require 91 separate verdict forms. Instead, he claims that the verdict forms for each aggravating factor only needed to specify that they applied to all counts in the case. According to defendant, because the verdict forms made no mention of which counts they applied to, it is impossible to tell on which counts the jury found the aggravating factors true. We disagree. The jury instructions referenced "offenses," "crimes," and "victims" regarding each aggravating factor. During closing arguments, both the prosecutor and the defense counsel repeatedly referred to the evidence involving each victim. The prosecutor closed her rebuttal argument by stating, "I would respectfully ask, that as you're going through the verdict forms, to find true all of the alleged factors. Because the crimes in this case were terrifying . . . for these

21

victims in the way this defendant carried them out." Based on the record, it is apparent that the jury believed that the verdict forms on the aggravating factors applied to all counts in the case. (*People v. Camacho* (2009) 171 Cal.App.4th 1269, 1274 [argument of counsel and jury instructions considered in determining the intent of jury where verdict form contained clerical error].)[7]

## IV.  *Bail Enhancement*

Defendant contends his two-year on-bail enhancement should be vacated because he did not admit the on-bail allegation and neither the jury nor the trial court found the allegation true. The People argue that the trial court found the allegation true when it imposed the two-year consecutive sentence based on the on-bail allegation.

The first amended information alleged that on October 26, 2021, defendant attempted to prevent and dissuade Jane Doe 1 from reporting a crime (§ 136.1, subd. (b)(1); count 18). It further alleged that at the time of

---

[7] Brennen's appellate counsel notified us of the recent decisions in *Erlinger v. United States* (2024) ___ U.S. ___ [219 L.Ed.2d 451] and *People v. Lynch* (2024) 16 Cal.5th 730, which he states are relevant to his argument that the trial court erred in imposing the upper term on count 2. *Lynch* address the proper test for prejudice when a trial court imposes a sentence based on factors not proven to a jury. (*Lynch*, at p. 746.) *Erlinger* addresses whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance of the evidence standard in sentencing a defendant under the Armed Career Criminal Act (18 U.S.C. § 921 et seq.) or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt. (*Erlinger*, at p. 458.) It held that a jury must resolve the factual question unanimously and beyond a reasonable doubt. (*Id.* at pp. 464–465.) Neither of these recent decisions impacts our analysis because the aggravating factors were found true by a jury and the trial court did not err in relying on those findings at sentencing.

the offense, defendant was released from custody on bail or his own recognizance (§ 12022.1).

While the jury was deliberating on the aggravating factors, the trial court stated: "We had an off-the-record discussion. We're still resolving some of the issues. The Court will make the out-on-bail allegation finding for sentencing, at the time of sentencing, and other factors in aggravation, if there are any, at the time of sentencing, including whether he was on probation at the time of either or both offenses." At the sentencing hearing, the parties did not specifically address the on-bail allegation, although the People's sentencing memorandum proposed including the two-year on-bail enhancement as part of the sentence. The trial court imposed a two-year enhancement based on the on-bail allegation. It stated: "And Count 17, 136.(b)(1) [*sic*][8] for one-third the midterm times two, for one year, four months consecutive. [¶] The Court is also imposing two years consecutive for the violation of Penal Code section 12022.1, the out-on-bail allegation." Defendant did not object.

Although the trial court did not make an express finding at the sentencing hearing as to the truth of the on-bail allegation, we find that it impliedly found the allegation true when it orally imposed a sentence on the on-bail enhancement. (*People v. Clair* (1992) 2 Cal.4th 629, 691, fn. 17

---

[8] Count 17 alleged violation of a court order (§ 166, subd. (a)(4); misdemeanor). However, the on-bail enhancement was alleged regarding count 18, which alleged that on October 26, 2021, defendant dissuaded Jane Doe 1 from reporting a crime, in violation of section 136.1, subdivision (b)(1). It appears that the trial court misidentified the violation of section 136.1, subdivision (b)(1) as count 17 rather than count 18. The abstract of judgment correctly lists count 18 as a violation of section 136.1, subdivision (b)(1) and states a two-year on-bail enhancement was imposed for this count under section 12022.1.

[finding that trial court's failure to expressly state serious felony prior conviction was found true did not invalidate sentence when, "[a]t sentencing, the court impliedly—but sufficiently—rendered a finding of true as to the allegation when it imposed an enhancement expressly for the underlying prior conviction" (italics omitted)]; *People v. Chambers* (2002) 104 Cal.App.4th 1047, 1051 [following *Clair* and finding that "trial court impliedly—but sufficiently—rendered a finding of true as to a firearm-use allegation when it imposed a 10-year enhancement for the underlying use of a firearm"].)[9]

## V.   *Restitution Fine*

Defendant contends that the trial court abused its discretion when it imposed a $3,000 restitution fine pursuant to section 1202.4.[10]  He also

---

[9] Following oral argument, defendant submitted a letter of new authority notifying us of the recently filed decision in *People v. Hughey* (Sept. 19, 2024, B325796) __ Cal.App.5th __ (*Hughey*) <https://www.courts.ca.gov/opinions/documents/b325796.pdf>, which he states is relevant to the on-bail enhancement issue.  In *Hughey*, the appellate court held it was error for the trial court to impose an on-bail enhancement based on an offense charged in another county when it was undisputed that there was no evidence the defendants had been convicted of the out-of-county offense.  (*Id.* at pp. 14–15.)  *Hughey* is distinguishable.  The defendant's sentencing memorandum states that he was in custody for the offenses charged in this case on January 26, 2021; from September 7, 2021, to October 22, 2021; and continuously since November 3, 2021.  The on-bail enhancement relates to defendant's conduct on October 26, 2021, while he was out on bail in the current case.  Unlike in *Hughey*, here it is undisputed that defendant was convicted of all offenses charged against him involving Jane Doe 1 and Jane Doe 2.

[10] Section 1202.4, subdivision (b) states, in relevant part:  "(1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense.  If the person is convicted of a felony, the fine shall not be less than three hundred dollars ($300) and not more than ten thousand dollars ($10,000). . . . [¶] (2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of the

24

argues the imposition of the fine violated his constitutional due process rights because he is indigent and has no ability to pay the fine. We find no error.

The probation report recommended defendant be ordered to pay a restitution fine of $5,100. It stated that defendant, who was then 35 years old, had been certified as a carpenter and had previously worked at a construction company. Defendant reported to the probation officer that he had no assets but owned a 1999 automobile. He reported that he currently had no source of income and no debt. However, he told the probation officer that he would pay restitution to the victims if it was ordered.

At sentencing, the trial court asked defense counsel if he wished to be heard on fines and fees. Defense counsel stated: "[Defendant] does not have any assets. He does not have any money saved in his checking account or his

minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." Subdivision (c) provides: "The court shall impose the restitution fine unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine. Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine pursuant to paragraph (1) of subdivision (b). . . ." Subdivision (d) provides that in determining the amount of the restitution fine in excess of the $300 minimum, "the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, . . . the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime. Those losses may include pecuniary losses to the victim or the victim's dependents as well as intangible losses, such as psychological harm caused by the crime. Consideration of a defendant's inability to pay may include the defendant's future earning capacity. A defendant shall bear the burden of demonstrating the defendant's inability to pay. Express findings by the court as to the factors bearing on the amount of the fine shall not be required. A separate hearing for the fine shall not be required."

25

savings account. He will be spending the next 24 years in prison so he does not have the present ability to pay nor will he have ability to pay in the future. We request that the Court waive those fines and fees. [¶] And that would also give [defendant] an opportunity to pay money towards restitution." The trial court agreed to waive the court operations assessment fee and the criminal conviction assessment fee. However, it imposed a $3,000 restitution fine, stating: "[T]he Court is going to impose a reduced restitution fine in the amount of $3,000. [¶] It should be 7200 given the length of time he'll be sentenced, but the Court's going to reduce it to $3,000. He is in custody, he will be working in custody, and he can pay restitution from there. [¶] And the Court will also note that in the probation report, contraband, drugs, were found in his cell which indicates there's access to something with some form of currency in custody."

There was no due process violation because defendant was provided with the opportunity to address his ability to pay. His counsel represented that defendant had no assets. No specific evidence in support of defense counsel's statements was presented; nor did defense counsel argue or provide any evidence that defendant would be unable to work while incarcerated. Defense counsel succeeded in having the trial court waive certain court fees and significantly reduce the amount of the restitution fine.[11]

We further find no abuse of discretion. Defendant argues that the trial court's decision was arbitrary and irrational because it was based on defendant's "theoretical ability to earn prison wages" without evidence that defendant was eligible for prison employment. He cites to a 2018 legislative

---

[11] The trial court's statement that based on the length of defendant's prison sentence the fine "should be 7200" appears to be a reference to applying a 24-year multiplier to the $300 minimum fine, pursuant to section 1202.4, subdivision (b)(2).

analysis report in support of his claim that "[t]here appears to be a 90% unemployment rate in California's prisons." He also cites to a prison pay schedule in the California Code of Regulations in support of his argument that it will be impossible for defendant to pay the $3,000 restitution fine with amounts he may earn in prison. (Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).) In the trial court, defendant neither argued that prison employment was unavailable nor presented the legislative analysis or a citation to to the California Code of Regulations.[12] Defendant's failure to argue these points below forfeits his claim. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1073–1074.)

The trial court was permitted to consider not only defendant's present ability to pay but also his ability to pay in the future, including his ability to obtain prison wages and to earn money upon release from prison. (*People v. Aviles, supra*, 39 Cal.App.5th at p. 1076.) Here, the probation report explained that defendant, who was 35 years old at the time, was previously employed in the construction industry. There is no indication in the record, and defendant does not argue, that he is physically unable to work or ineligible for prison work assignments, or that he will be unable to work upon his release from prison. On this record, we cannot find that the trial court's imposition of a $3,000 restitution fine was so irrational or arbitrary that no reasonable person could agree with it. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

---

[12] The legislative analysis is not part of the appellate record, and defendant has not filed a motion requesting that we take judicial notice of the analysis. We decline to consider the legislative analysis, which was never presented to the trial court.

## DISPOSITION

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.